NO. 15-1385

## In The
## United States Court of Appeals
## For The Fourth Circuit

Del Webb Communities, Inc. and PulteGroup, Inc.,

*Plaintiffs-Appellants,*

v.

Roger F. Carlson and Mary Jo Carlson,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

## OPENING BRIEF OF APPELLANTS

Robert L. Widener
MCNAIR LAW FIRM, P.A.
Post Office Box 11390
Columbia, South Carolina 29211

A. Victor Rawl, Jr.
Henry W. Frampton, IV
MCNAIR LAW FIRM, P.A.
Post Office Box 1431
Charleston, South Carolina 29402

*Counsel for the Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1385__        Caption: Del Webb Communities, Inc.; Pultegroup, Inc. v. Carlson _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

Del Webb Communities, Inc. _____
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                            ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
       Pultegroup, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                               ☑YES ☐NO
      If yes, identify all such owners:
       Pultegroup, Inc.

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ A. Victor Rawl, Jr.                              Date: ____April 21, 2015____

Counsel for: Del Webb and Pultegroup

## CERTIFICATE OF SERVICE
***************************

I certify that on ____April 21, 2015____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

        John T. Chakeris
        CHAKERIS LAW FIRM
        231 Calhoun Street
        Charleston, SC 29401
        Email: john@chakerislawfirm.com

____s/ A. Victor Rawl, Jr.____                    ____April 21, 2015____
        (signature)                                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1385__        Caption: Del Webb Communities, Inc.; Pultegroup, Inc. v. Carlson

Pursuant to FRAP 26.1 and Local Rule 26.1,

Pultegroup, Inc.
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☑ YES ☐ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ A. Victor Rawl, Jr.                            Date:    April 21, 2015

Counsel for: Pultegroup,Inc

## CERTIFICATE OF SERVICE
****************************

I certify that on    April 21, 2015    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

                    John T. Chakeris
                    CHAKERIS LAW FIRM
                    231 Calhoun Street
                    Charleston, SC 29401
                    Email: john@chakerislawfirm.com

s/ A. Victor Rawl, Jr.                              April 21, 2015
        (signature)                                        (date)

- 2 -

# TABLE OF CONTENTS

Table of Authorities.................................................................................iii

Jurisdictional Statement ...........................................................................1

Statement of Issue.....................................................................................1

Statement of Case .....................................................................................1

Standard of Review ...................................................................................4

Summary of Argument...............................................................................4

Argument...................................................................................................6

     I.    Introduction & Summary of Law on Class Arbitration..............6

     II.   The district court erred in holding that class arbitration
         was a procedural question to be decided by an arbitrator ........16

     III.  The present case exemplifies the difficulties and
         due process concerns expressed by the Supreme Court,
         the Third Circuit, and the Sixth Circuit ...................................18

     IV.  This Court should reverse the district court and join the
         Third and Sixth Circuits to hold that class arbitration is a
         gateway question for the courts ................................................19

Conclusion...............................................................................................20

Statement Regarding Oral Argument.......................................................20

Certificate of Compliance .......................................................................21

Certificate of Service...............................................................................22

# TABLE OF AUTHORITIES

## Cases

*American. Bankers Int'l Group v. Long,*
453 F.3d 623 (4th Cir. 2006)............................................................15

*AT&T Mobility LLC v. Concepcion,*
___ U.S. ___, 131 S. Ct. 1740 (2011) ......................................6, 11-14, 16-19

*Brantley v. Republic Mortg. Ins. Co.,*
424 F.3d 392 (4th Cir. 2006)............................................................15

*Carlson v. South Carolina State Plastering, LLC,*
404 S.E.2d 250 (S.C. App. 2013)........................................................2

*Central W. Va. Energy v. Bayer Cropscience LP,*
645 F.3d 267 (4th Cir. 2011)..........................................................8, 15

*Davis v. ECPI Col. of Tech., L.C.,*
227 F. Appx. 250 (4th Cir. 2007) ........................................................16

*Dockser v. Schwartzberg,*
433 F.3d 421 (4th Cir. 2006)............................................................8

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995) .................................................................7, 13

*Gagliano v. Reliance Std. Life Ins. Co.,*
547 F.3d 230 (4th Cir. 2008)............................................................4

*Green Tree Fin. Corp. v. Bazzle,*
539 U.S. 444 (2003) ..........................................................4, 5, 8, 9, 16

*Hill v. Lockheed Martin Logistics Mgmt.,*
354 F.3d 277 (4th Cir. 2004) (*en banc*).................................................4

*Howsam v. Dean Witter Reynolds,*
537 U.S. 79 (2002) .................................................................4, 7, 8

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
206 F.3d 411 (4th Cir. 2000), *abrogated on other grounds by*
*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)......................15

*John Wiley & Sons, Inc. v. Livingston*,
376 U.S. 543 (1964) ..........................................................................8, 13

*Long v. Silver*,
248 F.3d 309 (4th Cir. 2001), *abrogated on other grounds by*
*Hertz Corp. v. Friend*, 559 U.S. 77, 89 (2010) .................................15

*Marie v. Allied Home Mortg. Co.*,
402 F.3d 1 (1st Cir. 2005) ....................................................................9

*Marrowbone Dev. Co. v. District 17 UMW*,
147 F.3d 296 (4th Cir. 1998)...............................................................15

*Opalinski v. Robert Half Int'l, Inc.*,
761 F.3d 326 (3d Cir. 2014),
*cert. denied*, ___ U.S. ___, 135 S. Ct. 1530 (2015) ............5, 6, 13, 14, 16, 19

*Oxford Health Plans LLC v. Sutter*,
___ U.S. ___, 133 S. Ct. 2064 (2013) ....................................5, 10, 11, 16, 19

*Reed Elsevier, Inc. v. Crockett*,
734 F.3d 594 (6th Cir. 2013),
*cert. denied*, ___ U.S. ___, 134 S. Ct. 2291 (2014) ............ 5, 7, 11-13, 16, 19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ...................................5, 7, 9-11, 13-15, 17, 19

*Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*,
984 F.2d 113 (4th Cir. 1993).................................................................15

*Washington. Square Sec., Inc. v. Aune*,
385 F.3d 432 (4th Cir. 2004)................................................................15

## **Statutes**

9 U.S.C. § 4 ......................................................................................3

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1332 ...............................................................................1

S.C. Code Ann. § 39-5-140(a) (1976)............................................18

## **Other Authorities**

Fed. R. Civ. P. 56(f)(1)......................................................................4

David S. Clancy & Matthew M.K. Stein,
*An Uninvited Guest: Class Arbitration and the*
*Federal Arbitration Act's Legislative History*, 63 BUS. LAW. 55 (2007)........6

## JURISDICTIONAL STATEMENT

The district court had diversity jurisdiction over this matter under 28 U.S.C. § 1332(a), because the parties are completely diverse, and the Appellee's (Plaintiffs') claims exceed $75,000. (J.A. 1-2, 86, 96-97). The district court also had subject matter jurisdiction under 28 U.S.C. § 1332(d), because this matter involves a putative class action in which the parties are completely diverse and there is more than $5,000,000 in controversy. (J.A. 86, 89-91). This court has jurisdiction under 28 U.S.C. § 1291, because the Appellants (Pulte) timely appealed on April 13, 2015, from the final order and judgment of the district court, which were entered on April 6 and 10, 2015, respectively. (J.A. 198-204, 210-214).

## STATEMENT OF ISSUE

This case presents the issue expressly left unresolved by the Supreme Court in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013): Is the question of whether the parties agreed to authorize class action arbitration a gateway question of arbitrability for the court to decide, or merely a question of procedure for the arbitrator to decide? This is an issue of first impression for this Court.

## STATEMENT OF CASE

This case arises out of alleged construction defects in a home that the Plaintiffs purchased from Pulte under a contract with an arbitration clause. The case is now in arbitration, where the Plaintiffs seek to arbitrate a class action for 2,000

1

class members. The district court held that the arbitrator should decide the question of whether class arbitration was permissible under the parties' contract. (J.A. 198, 204). Pulte appeals and submits that the question of class arbitration is for the court.

On March 8, 2002, the Plaintiffs purchased the home from Pulte. (J.A. 16-41). The purchase agreement contained an arbitration clause requiring the Plaintiffs to arbitrate any claims against Pulte, but it was silent on the question of class arbitration or any representative claims being made in arbitration. (J.A. 34-35, ¶ 4.3).

In September 2008, the Plaintiffs filed an action against Pulte in South Carolina state court, alleging construction defects in the stucco siding of their home. (J.A. 47-57.) In February 2011, Pulte moved to compel arbitration or dismiss the case based on the arbitration clause in the parties' contract. The South Carolina trial court denied the motion to compel arbitration, holding that Pulte had waived its right to arbitration. Pulte appealed, and the South Carolina Court of Appeals reversed the trial court, holding that the Plaintiffs were required to arbitrate their claims. *Carlson v. South Carolina State Plastering, LLC*, 743 S.E.2d 868 (S.C. App. 2013). The Plaintiffs did not seek rehearing in the Court of Appeals, nor did they seek review by the South Carolina Supreme Court.

On March 7, 2014, the Plaintiffs filed a Demand for Arbitration with the American Arbitration Association (AAA). (J.A. 86). Their demand included class allegations seeking to arbitrate claims involving 2,000 homes. (J.A. 86, 89-91).

2

Because of their initial failure to pay the appropriate filing fees, the Plaintiffs'
arbitration demand was not perfected until April 25, 2014. (J.A. 4, ¶¶ 16-18). At
the inception of and throughout the arbitration proceedings, Pulte objected to the
arbitrator deciding the question of whether class arbitration was permitted under the
arbitration agreement, contending instead that it was gateway question of
arbitrability for the court. (See, *e.g.*, J.A. 109-110).

Two weeks later (May 9, 2014), Pulte filed the present action in the district
court to compel bilateral rather than class arbitration under 9 U.S.C. § 4, which is
Section 4 of the Federal Arbitration Act (FAA). (J.A. 1-14.) This action presented
two legal questions. ***First***, is it for the court or the arbitrator to decide whether an
arbitration agreement authorizes class arbitration? ***Second***, if it is a question for the
court, does the arbitration agreement here authorize class arbitration?

On March 26, 2015, the district court dismissed the present action without
prejudice, holding as a matter of law that the arbitrator should decide whether the
parties' arbitration agreement authorized class arbitration. (J.A. 198-204). On April
6, 2015, the district court issued an order clarifying that the dismissal was with
prejudice. (J.A. 210-211). Pulte timely appealed to this Court. (J.A. 213-214).

## STANDARD OF REVIEW

Pulte moved for summary judgment. The district court denied Pulte's motion and granted summary judgment to the non-moving Plaintiffs under Fed. R. Civ. P. 56(f)(1). This Court reviews the district court's grant of summary judgment *de novo*. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 283 (4th Cir. 2004) (*en banc*). As relevant to the order on appeal, the parties agreed that there were no disputed issues of fact, and the district court ruled as a matter of law that the question of whether the parties agreed to authorize class arbitration was for the arbitrator, not the court. This Court reviews the district court's conclusions of law *de novo*. *Gagliano v. Reliance Std. Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir. 2008).

## SUMMARY OF ARGUMENT

The Supreme Court has established that "questions of arbitrability" are for the court to decide, and "questions of procedure" are for the arbitrator to decide. In *Howsam, infra*, the Supreme Court explained that "questions of arbitrability" involve fundamental questions concerning the nature of the dispute, whereas "questions of procedure" involve routine procedural details.

In *Bazzle, infra*, a plurality of the Supreme Court ruled that the question of whether an arbitration agreement permitted class arbitration was a procedural question for the arbitrator. Thereafter, courts began relying on *Bazzle* as precedent to hold that class arbitration was a question for the arbitrator. The Supreme Court

4

responded to this trend by disavowing *Bazzle* as having any precedential value and signaling that class arbitration was likely a gateway question of arbitrability for the court. See *Stolt-Nielsen* and *Oxford Health*, both *infra*. Relying on the Supreme Court's post-*Bazzle* decisions, the Third and Sixth Circuits held that class arbitration was a gateway question for the court. See *Reed Elsevier* and *Opalinski*, both *infra*. The Supreme Court denied certiorari in both cases. The Third and Sixth Circuits are the only circuits to reach this issue in the wake of the Court's post-*Bazzle* decisions.

Here, the district court relied on *Bazzle* to hold that class arbitration was a procedural question for the arbitrator. The district court ignored several important matters: (1) the Supreme Court's post-*Bazzle* decisions on the numerous problems and concerns raised by class arbitration; (2) the rulings by the Third and Sixth Circuits; and (3) this Court's holdings that questions concerning the proper parties to and the proper claims in an arbitration are questions for the court, both of which are implicated in deciding whether the parties agreed to class arbitration. It is respectfully submitted this Court should join the Third and Sixth Circuits, reverse the district court, and hold that class arbitration is a gateway question for the court.

# ARGUMENT

## I.    Introduction & Summary of Law on Class Arbitration

The concept of class arbitration is a recent development that Congress did not envision when it enacted the FAA. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751-52 (2011) (noting that Congress did not intend to leave the safeguarding of constitutional due process rights to an arbitrator under the FAA). It is therefore not surprising that many arbitration agreements, particularly those drafted more than ten years ago, do not address class arbitration. That is the case here, as the parties' 2002 agreement does not mention class arbitration. (J.A. 19-20). Thus arises the issue presented here – who decides whether an arbitration agreement permits class arbitration, the court or the arbitrator?[1]

The Supreme Court has not ruled expressly on this issue. The Third and Sixth Circuits are the only circuits that have reached this issue under the Supreme Court's recent opinions, and both courts have concluded that class arbitration is a question of arbitrability that must be decided by the courts. See *Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 332-33 (3d Cir. 2014), *cert. denied*, __ U.S. __, 135 S. Ct. 1530

---

[1] There is persuasive commentary that the very notion of class arbitration is antithetical to the alternative dispute resolution scheme created by Congress in the FAA. *See* David S. Clancy & Matthew M.K. Stein, *An Uninvited Guest: Class Arbitration and the Federal Arbitration Act's Legislative History*, 63 BUS. LAW. 55, 62-62 (2007) (legislative history shows that the FAA does not permit class arbitration).

(2015); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 2291 (2014). Pulte respectfully submits that this Court should join the Third and Sixth Circuits.

A.    The Basic Analytical Framework.

The basic analytical framework for addressing the question of "who decides" is firmly established by Supreme Court precedent. Arbitration is a matter of consent and, therefore, an arbitrator may resolve "only those disputes . . . that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Thus, a party cannot be compelled to submit to class arbitration unless they agreed to do so. *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681, 684 (2010).

Questions of arbitrability are "gateway" disputes that are reserved for the courts. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83, 85 (2002). The classic gateway disputes involve the involve the threshold questions of what parties and what claims are subject to arbitration. *Howsam*, 537 U.S. at 84; *First Options*, 514 U.S. at 943, 946. Reserving such gateway questions is critical, because it "avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Howsam*, 537 U.S. at 83-84.

In contrast to gateway "questions of arbitrability" reserved for judicial determination, there are more routine "procedural" questions that "grow out of the

7

dispute" and are presumptively for the arbitrator to decide. *Howsam*, 537 U.S. at 85. Such procedural questions include application of the time limit rules for arbitration, *id.*, and determining whether a grievance procedure's steps were followed. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 559 (1964).[2]

### B.    The Supreme Court's Decisions on "Who Decides?"

In *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) a fragmented Supreme Court addressed the question of whether an arbitrator or the court should decide whether an arbitration agreement permits class arbitration. Four justices (Breyer, Scalia, Souter, and Ginsburg) concluded that the question was a matter for the arbitrator. *Id.* at 447-454. Justice Stevens disagreed with the reasoning of the four justices but joined them to avoid the absence of a judgment from the Court. *Id.* at 454-455. Three justices (Rhenquist, O'Connor, and Kennedy) dissented, concluding that the question of class arbitration was for the court. *Id.* at 455-460.

---

[2] To the list of questions of procedure committed to the arbitrator, this Court has added such common procedural disputes as the number of arbitrators, *Dockser v. Schwartzberg*, 433 F.3d 421, 427 (4th Cir. 2006), and the proper venue of the arbitration, *Central W. Va. Energy v. Bayer Cropscience LP*, 645 F.3d 267, 274 (4th Cir. 2011). Because these matters are internal to the arbitration process – that is, they involve how the parties and claims *already committed to arbitration* will proceed – and do not impinge on the boundaries of the arbitration itself, it is "reasonable to infer" that the parties would have expected resolution by the arbitrator. *Howsam*, 537 U.S. at 85. Put differently, committing these questions to the arbitrator is appropriate and permissible because there is no serious risk of "forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83-84.

Justice Thomas dissented separately, concluding that the FAA did not pre-empt state law and, therefore the appealed order should be affirmed. *Id.* at 460.

After *Bazzle*, courts across the country relied on it as holding that the question of class arbitration was a matter for the arbitrator, not the courts. *E.g.*, *Marie v. Allied Home Mortg. Co.*, 402 F.3d 1, 10 (1st Cir. 2005) (In *Bazzle,* the Supreme Court "held that whether an arbitration agreement allowed for class arbitration was likewise an issue of contract interpretation for the arbitrator rather than the judge."). In response to this trend, the Supreme Court made it clear that the *Bazzle* plurality was not binding precedent and that the Court had not yet decided the issue of "who decides."

In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), the Supreme Court held that "parties cannot be compelled to submit their dispute to class arbitration" when it is undisputed that the parties had never reached an agreement to do so, either in the arbitration agreement itself or in any other agreement. *Id.* at 687. In so ruling, and although the parties had agreed to submit this question of class arbitration to a panel of arbitrators, the Court noted that *Bazzle* appeared to have "baffled the parties" into believing that *Bazzle* "requires an arbitrator, not a court, to decide whether a contract permits class arbitration." *Id.* at 680. The Court, however, explained that *Bazzle* did not yield a majority decision on that issue. *Id.* at 679. Importantly, the Court also held that a request to arbitrate on a classwide basis does not implicate "merely what 'procedural mode' [is] available"; rather, it implicates

9

"whether the parties *agreed to authorize* class arbitration," which cannot be presumed by the mere agreement to arbitrate. *Id.* at 687 (emphasis in original).

In *Oxford Health Plans LLC v. Sutter*, __ U.S. __, 133 S. Ct. 2064 (2013), the Supreme Court affirmed an arbitrator's decision permitting class arbitration, holding that its very limited scope of review required affirmance. In so ruling, the Court concluded that there would be a "different issue" before the Court had Oxford argued below that class arbitration was a gateway question of arbitrability. Such issues are presumptively for courts, and an arbitrator's decision on such issues was subject to *de novo* judicial review absent a clear and unmistakable agreement allowing the arbitrator to make that decision, which was present in *Oxford Health* because the parties agreed to it after the commencement of the arbitration. 133 S. Ct. at 2068-2069, n.2. The Court emphasized that *Stolt-Nielsen* had "made clear that this Court has not yet decided whether the availability of class arbitration is a [gateway] question of arbitrability." *Id.* The *Oxford Health* case did not present an opportunity to address that issue, because the parties had agreed to submit the question of class arbitration to the arbitrator "after *Stolt-Nielsen* flagged that it might be a [gateway] question of arbitrability." *Id.*

C.    The Third and Sixth Circuit Decisions on "Who Decides?"

The Third and Sixth Circuit are the only circuits to address whether class arbitration is a gateway question for the courts in the wake of the Supreme

Court's post-*Bazzle* decisions in *Stolt-Nielsen, Concepcion,* and *Oxford Health*, all *supra.* Both circuits rightly concluded that the question of class arbitration is a gateway question for the courts.

> 1.   *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 2291 (2014).

In *Reed Elsevier*, the Sixth Circuit held that class arbitration is a gateway matter for the court. *Id.* at 599.  The court first observed that, despite the result in *Bazzle*, the Supreme Court had made it clear in *Stolt-Nielsen* and *Oxford Health* that *Bazzle* was not binding precedent and that the question of "who decides" remained an open question. *Id.* at 598.  Turning to that open question, the Sixth Circuit relied on the Supreme Court's decisions in *Stolt-Nielsen, supra* and *AT&T Mobility LLC v. Concepcion,* __ U.S. __, 131 S. Ct. 1740 (2011), as giving "every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary [procedural] one." *Reed Elsevier*, 734 F.3d at 598. Those indications were the following: (1) simply agreeing to arbitration does not create a presumption of consenting to class arbitration; (2) there are numerous "fundamental" differences between bilateral and class arbitration; and (3) there are numerous due process concerns in class arbitration, because it decides the rights of absent parties. *Id.* at 598; see also *Stolt-Nielsen*, 559 U.S. at 685-687 and *Concepcion*, 131 S. Ct. at 1750-1753.

11

In *Concepcion*, as noted in *Reed Elsevier,* the Supreme Court elaborated on three fundamental changes to the arbitration process wrought by class arbitration.

- ***First***, the Court noted that "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." 131 S. Ct. at 1751. Put simply, there is no obvious reason why a rational party would agree at the outset to class arbitration.

- ***Second***, "class arbitration *requires* procedural formality" to comport with due process. *Id.* (emphasis in original). For all practical purposes, this means that class arbitration will involve the full procedural rigor of Fed. R. Civ. P. 23. As the Supreme Court noted, a workable alternative to Rule 23 "is not obvious" in light of the due process rights of absent class members. *Id.* Even applying Rule 23, the Supreme Court expressed skepticism at an arbitrator's ability to safeguard those rights. *Id.*

- ***Third***, the Court noted that, "class arbitration greatly increases risks to defendants," in light of the high stakes attendant to class arbitration and the lack of effective judicial review. *Id.* at 1751-52.

Summing up, the Supreme Court stated that "[a]rbitration is poorly suited to the higher stakes of class litigation," and, as such, it is "hard to believe that defendants would bet the company with no effective means of review." *Id.* at 1752.

The Sixth Circuit concluded that, because arbitration was so poorly suited to the high stakes of class litigation that class arbitration, it was a gateway question for the court. Procedural questions for the arbitrator "concern details," but the Supreme Court has made it clear that "whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail." *Reed Elsevier*, 734 F.3d at 598. Indeed, the

12

question of class arbitration is "vastly more consequential than even the gateway question" of whether parties had agreed to arbitrate bilaterally. *Id.* at 598-599.

>    2.    *Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 332-33 (3d Cir. 2014), *cert. denied*, __ U.S. __, 135 S. Ct. 1530 (2015)

In *Opalinski*, the Third Circuit held that class arbitration was a gateway question for the court because of "the fundamental differences between classwide and individual arbitration, and the consequences of proceeding with one rather than the other." *Id.* at 329, 335. The Third Circuit correctly observed that class arbitration involved the classic gateway question of who was subject to arbitration, as well as the classic gateway question of the type of claim that was subject to arbitration. *Id.* at 332-334. In so ruling, like the Sixth Circuit in *Reed Elsevier, supra*, the Third Circuit relied on the Supreme Court's post-*Bazzle* rulings in *Stolt-Nielsen* and *Concepcion*, both *supra*.

It is firmly established the question of whether or not a person must arbitrate a claim is a classic gateway question of arbitrability for the court. *Opalinski*, 761 F.3d at 332, *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 941-942, 946-947 (1994) *and John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-547 (1964). In seeking class arbitration, the Plaintiffs contend that their arbitration agreement empowers "the arbitrator to resolve not only their personal claims but [also] the claims of additional individuals not currently parties to the action."

13

*Opalinski*, 761 F.3d at 332. The Plaintiffs' claim for class arbitration therefore "affects whose claims may be arbitrated and is thus a question of arbitrability to be decided by the court." *Id.* at 332-333 (also noting that "courts should be wary of concluding the availability of classwide arbitration is for the arbitrator to decide, as that decision implicates the rights of absent class members without their consent.").

It is also firmly established that whether an arbitration agreement applies to a particular type of controversy is classic gateway question of arbitrability for the court. *Opalinski*, 761 F.3d at 333. The availability of class arbitration is not the type of procedural question generally reserved for an arbitrator, because "the Supreme Court expressly disclaimed classwide arbitration as simply procedural" in *Stolt-Nielsen. Id.* Moreover, the Supreme Court expressed grave concerns over class arbitration in *Stolt-Nielsen* and *Concepcion. Id.* at 333-334. Class arbitration is "a substantive gateway dispute qualitatively separate from deciding an individual quarrel," and the differences between class and individual arbitration "are so distinct that a choice between the two goes, we believe, to the very type of controversy to be resolved." *Id.* at 334.

In short, the Third Circuit held that "the fundamental differences between classwide and bilateral arbitration, and the consequences of proceeding with one rather than the other," renders class arbitration "a substantive gateway question" that is for the court. *Id.* at 335.

14

D.    This Court's Decisions on "Who Decides?"

This Court has not yet addressed issue of whether class arbitration is a question of arbitrability.  Like the Third Circuit in *Opalinski*, however, this Court has held that "the court decides, as issues of contract law, the threshold questions of whether a party is contractually bound to arbitrate and whether, if so bound, the arbitration provision's scope makes the issue in dispute arbitrable."  *Marrowbone Dev. Co. v. District 17 UMW*, 147 F.3d 296, 300 (4th Cir. 1998).  Moreover, the district courts in this Circuit – not arbitrators – have decided who is a proper party to an arbitration, and this Court has consistently characterized these decisions as concerning "arbitrability."[3]  Likewise, applying the longstanding principles set forth in *Howsam* and its predecessors, this Court has noted that "[t]he general rule is that whether particular disputes are arbitrable under a contractual arbitration clause are questions for the court to decide as a matter of contract interpretation."  *Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 117 (4th Cir. 1993).

-------------------------------------------------------------------

[3] *See, e.g.*, *Wash. Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004) (determining, as a question of arbitrability, whether party to arbitration agreement could be required to arbitrate with non-signatory to agreement); *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2006) (same); *Am. Bankers Int'l Group v. Long*, 453 F.3d 623, 629 (4th Cir. 2006) (same); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000) (deciding, as a question of arbitrability, whether party could be required to arbitrate under arbitration agreement that the party did not sign), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) (same), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77, 89 (2010).

15

In addition, this Court has acknowledged that, in *Stolt-Nielsen*, the Supreme Court "found that the particular question of whether parties had 'agreed to authorize class arbitration' was not one of procedure." *Cent. W. Va. Energy Inc.*, 645 F.3d at 275. Accordingly, this Court's jurisprudence concerning the background law on questions of arbitrability and the proper reading of the Supreme Court's post-*Bazzle* decisions is in line with the law relied upon by the Third and Sixth Circuits in *Opalinski* and *Reed Elsevier*.

## II. The district court erred in holding that class arbitration was a procedural question to be decided by an arbitrator.

The district court held that class arbitration is merely "a procedural question involving contract interpretation to be determined by the arbitrator." (J.A. 198). In so ruling, the district court relied on the "guidance" provided by the plurality opinion in the Supreme Court's decision in *Bazzle* and this Court's unpublished opinion in *Davis v. ECPI Col. of Tech., L.C.,* 227 F. Appx. 250 (4th Cir. 2007). (J.A. 202-203). The Supreme Court has made it clear that *Bazzle* has no precedential value, and this Court's unpublished opinion in *Davis* does not support the district court's decision for numerous reasons, including the following: (1) the case was decided in 2007, long before the Supreme Court's post-*Bazzle* decisions in *Stolt-Nielsen* (2010), *Concepcion* (2011), and *Oxford Health* (2013), all *supra*; (2) the arbitration agreement expressly addressed the issue of class arbitration; and (3) the appellants never raised any gateway issue of arbitrability.

16

The district court did not address the numerous concerns expressed by the Supreme Court about class arbitration in *Stolt-Nielsen* and *Concepcion*, both *supra*. Those cases demonstrate that the Supreme Court does not view class arbitration as merely a procedural device, and the Court has "flagged" the "who decides" question as a likely question of arbitrability that is for the courts, not arbitrators.

The district court also never addressed the well-reasoned opinions by the Third and Sixth Circuits. Those circuits concluded that the question of class arbitration so fundamentally changed the nature, scope, and impact of an agreement for bilateral arbitration that it was a gateway question for the court, not an arbitrator. In particular, the Third Circuit rightly concluded that the question of class arbitration raised classic gateway questions of who and which type of claims were subject to the arbitration, and the district court did not address this Court's opinions agreeing that these questions are indeed questions of arbitrability.

Finally, and perhaps most importantly, the district court failed to recognize that the question of class arbitration goes to the most fundamental of all gateway questions – whether there was an agreement between the parties. As the Supreme Court has expressly held, an arbitration agreement does not and cannot authorize class arbitration unless the parties agreed to it, and the existence of an agreement to arbitrate is a classic gateway question for the courts, not the arbitrator.

17

### III.  The present case exemplifies the difficulties and due process concerns expressed by the Supreme Court, the Third Circuit, and the Sixth Circuit.

The present case is a good example of the concerns expressed by the Supreme Court in *Concepcion, supra*, and echoed by the Third and Sixth Circuits. The Plaintiffs claim that the stucco cladding on their house must be removed and replaced at a cost of $75,000. They also claim that they are entitled to an award of treble damages plus attorney's fees under the South Carolina Unfair Trade Practices Act (SCUTPA), thereby raising their claim to approximately $300,000 (*e.g.,* treble damages plus some amount of fees). The benefits of arbitration make sense in the context of a claim for $300,000.

The Plaintiffs claim that the class of 2,000 homeowners must also have their homes re-clad at a cost of $75,000 per home, yielding a class claim of $150 Million Dollars. The benefits of arbitration disappear under this number, because class arbitration is just as lengthy and costly as class litigation, and the associated waiver of judicial review becomes an unreasonable and unbearable risk.

Moreover, as a matter of law, SCUTPA claims cannot be brought in a representative capacity. S.C. Code Ann. § 39-5-140(a) (1976) (person "may bring an action individually, *but not in a representative capacity*, to recover actual damages") (emphasis added). Thus, to achieve class arbitration, the Plaintiffs will have to waive all SCUTPA claims on behalf of all class members. This immediately

18

raises serious adequacy of representation concerns.  Putting aside those concerns, there remains serious problems with the sufficiency of any potential class notice.

In addition to the typical and often cumbersome notice issues in class claims, such as not having any right to control the class arbitration of their claims and waiving virtually any right to judicial review by appeal, the notice will have to explain *inter alia* that being in the class means that they have waived the right to make a SCUTPA claim, that their damage claim is limited to a maximum of $75,000, that the class representatives will receive a greater share of the damage award even though they have also waived their SCUTPA claim, and that they may ultimately be liable for Pulte's attorney's fees and costs under the "prevailing party" clause of the arbitration agreement (see J.A. 35, ¶ 4.3).

## IV.     This Court should reverse the district court and join the Third and Sixth Circuits to hold that class arbitration is a gateway question for the courts.

The Third and Sixth Circuits' decisions in *Opalinski* and *Reed Elsevier*, both *supra*, are thorough and well-reasoned discussions of the issue presented here, including the Supreme Court's post-*Bazzle* decisions in *Stolt-Nielsen, Concepcion,* and *Oxford Health*, all *supra*.  The logic of their conclusions is inescapable – the difference between bilateral and class arbitration is so fundamental and so vast that it is a gateway question for the courts.  Moreover, their reasoning and conclusions align perfectly with this Court's decisions establishing that "who" and "what claims"

19

are in arbitration are gateway questions for the court. Accordingly, Pulte respectfully submits that this Court should join the Third and Sixth Circuits and hold that class arbitration is a gateway question for the court.

## CONCLUSION

For the foregoing reasons, the district court's order and judgment should be vacated, and the case should be remanded with instructions for the district court to decide in the first instance whether the parties agreed to class arbitration.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents a question of law with a clear answer, but the Appellants welcome the opportunity to appear before this Court if it desires oral argument.

Respectfully Submitted,

/s  Robert L. Widener

Robert L. Widener
rwidener@mcnair.net
McNair Law Firm, P.A.
Post Office Box 11390
Columbia, South Carolina 29211

A. Victor Rawl, Jr.
vrawljr@mcnair.net
Henry W. Frampton, IV
hframpton@mcnair.net
McNair Law Firm, P.A.
Post Office Box 1431
Charleston, South Carolina 29402

*Counsel for the Appellants*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** <u>15-1385</u>    **Caption:** <u>Dell Webb Communities, Inc.; PulteGroup, Inc, Plaintiffs -</u>
<u>Appellants v. Roger F. Carlson and Mary Jo Carlson,</u>
<u>Defendants - Appellees</u>

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the   type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

☑  this brief contains ____4,860____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑  this brief has been prepared in a proportionally spaced typeface using
<u>Microsoft Word</u>_____[*identify word processing program*] in
<u>14-Point Times New Roman</u>_____[*identify font size and type style*]; **or**

☐  this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) <u>Robert L. Widener</u>_____

Attorney for <u>Appellants</u>_____

Dated: <u>May 26, 20115</u>_____
04/13/2012

# CERTIFICATE OF SERVICE

I certify that on <u>May 26, 2015</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John T. Chakeris
CHAKERIS LAW FIRM
231 Calhoun Street
Charleston, SC 29401

<u>s/ Robert L. Widener</u>
Signature

<u>May 26, 2015</u>
Date